UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Keri L.-A.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

23-CV-6179-LJV
DECISION & ORDER

On March 28, 2023, the plaintiff, Keri L.-A. ("Keri"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.*  On June 23, 2023, Keri moved for judgment on the pleadings, Docket Item 6-1; on August 30, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12-1; and on September 13, 2023, Keri replied, Docket Item 13.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Keri applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Keri's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.    THE ALJ'S DECISION

On December 21, 2022, the ALJ found that Keri had not been under a disability since her alleged onset date of December 17, 2014.[4]  *See* Docket Item 5-1 at 412.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.*

At step one, the ALJ found that Keri had not engaged in substantial gainful activity since her alleged onset date.  *Id.* at 402.  At step two, the ALJ found that Keri suffered from several severe, medically determinable impairments: "developmental dysplasia of the left hip, left hip osteoarthritis, right hip osteoarthritis, obesity, borderline

---

[4] On August 30, 2021, United States Magistrate Judge H. Kenneth Schroeder, Jr., remanded Keri's case because the ALJ did not adequately address the finding of Thundathil O. Abraham, M.D. ("Dr. Abraham"), "that [Keri] was very limited in her apparent ability to function in a work setting at a consistent pace and moderately limited with maintaining attention/concentration."  Docket Item 5-1 at 498, 502.  In addition, Judge Schroeder found that "[t]he ALJ also failed to assess Dr. Abraham's April 2016 Psychiatric Report in which he found that [Keri] was not capable of working in any capacity at any time."  *Id.* at 500.  The ALJ's decision dated December 21, 2022, was issued pursuant to that remand.  *Id.* at 413.

personality disorder, post-traumatic stress disorder, bipolar disorder, and major depressive disorder." *Id.*

At step three, the ALJ found that Keri's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 402-404. More specifically, the ALJ found that Keri's physical impairments did not meet or medically equal listing 1.18 (abnormality of a major joint in any extremity) and that Keri's mental impairments did not meet or medically equal listing 12.04, 12.08, or 12.15 (depressive, bipolar, or related disorders)*, id.* at 402-403. In assessing Keri's mental impairments, the ALJ found that Keri was: (1) mildly impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting or managing herself. *Id.* at 403-404.

The ALJ then found that Keri had the residual functional capacity ("RFC")[5] to "perform sedentary work as defined in 20 C.F.R. [§§] 404.1567(a) and 416.967(a)" except that

> [Keri] can occasionally balance, stoop, kneel, and crawl. [She] can never crouch. [She] can occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds. [She] can never work in hazardous environments, such as unprotected heights or around moving mechanical parts. [She] can understand, remember, and carry out simple instructions in the workplace. [She] can work in a low stress job, defined as making only occasional decisions and tolerating only occasional changes in the work setting. [She] can

---

[5] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

>    perform repetitive work, but not work requiring a specific production rate, such as assembly line work. [She] can have no more than occasional interaction with supervisors, coworkers, and the general public with respect to performing work related duties.

*Id.* at 404-405 (footnote omitted).

At step four, the ALJ found that Keri had no past relevant work. *Id.* at 411. But given Keri's age, education, and RFC, the ALJ found at step five that Keri could perform substantial gainful activity as a touch-up screener, addresser, or final assembler. *Id.* at 412; *see Dictionary of Occupational Titles* 726.684-110, 1991 WL 679616 (Jan. 1, 2016); *id.* at 209.587-010, 1991 WL 671797 (Jan. 1, 2016); *id.* at 713.687-018, 1991 WL 679271 (Jan. 1, 2016). Therefore, the ALJ found that Keri had not been under a disability or entitled to SSI since December 17, 2014. *See* Docket Item 5-1 at 412.

## II.   ALLEGATIONS

Keri argues that the ALJ erred in two ways. Docket Item 6-1 at 1. First, she argues that after rejecting every opinion in the record about Keri's physical and mental limitations, the ALJ erred by relying on his own lay interpretation of the raw medical record to craft the RFC. *Id.* at 18. Second, she argues that the ALJ erred in weighing the opinion evidence of her treating physician, Dr. Abraham. *Id.* at 23. This Court agrees that the ALJ erred and, because that error was to Keri's prejudice, remands the matter to the Commissioner.

## III.   ANALYSIS

### A.   RFC DETERMINATION

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir.

5

2013) (summary order); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order). As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7. "Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's physical limitations, the ALJ may not rely on the record in determining the plaintiff's RFC." *Cheek v. Comm'r of Soc. Sec.*, 2020 WL 2028258, at *4 (W.D.N.Y. Apr. 28, 2020) (citing *Trippett v. Comm'r of Soc. Sec.*, 2018 WL 4268917, at *4 (W.D.N.Y. Sep. 7, 2018)). And when an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence support[s] his RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review." *Gorny v. Comm'r of Soc. Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018).

As a general rule, "where the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner "may not make the connection himself." *Perkins v. Berryhill,* 2018 WL 3372964, at *3 (W.D.N.Y. Jul. 11, 2018) (citing *Jermyn v. Colvin,* 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of the medical sources assessed [the p]laintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination.")). So in most cases "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin,* 195 F. Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). Only in limited circumstances, such as "when the medical evidence shows only minor physical impairments, [may] an ALJ permissibly . . . render a common[ ]sense judgment about functional capacity even without a physician's assessment." *Perkins,* 2018 WL 3372964, at *3 (internal citation omitted).

Here, the ALJ violated those principles when he fashioned an RFC based solely on the raw medical data and diagnoses of Keri's impairments. And the best evidence of that is the explanation that the ALJ gave about why he found only the limitations in the RFC and no others.

With respect to Keri's physical RFC, for example, the ALJ provided the following explanation:

> Considering [Keri's] diagnostic imaging showing post-surgical and degenerative changes in her bilateral hips; her left hip surgery prior to the period at issue, as well as her multiple hip surgeries during the period at issue; her physical examinations showing elevated body mass index, an antalgic gait, pain with range of motion in her hips, reduced range of motion in her hips, limited coordination due to pain, groin pain, and diffuse weakness; her treatment with medication and injections; and her subjective complaints and activities of daily living,

7

> the undersigned has limited [Keri] to work at the sedentary exertional level with the above postural and environmental limitations. However, [Keri's] physical examinations showing a normal and steady gait, normal musculoskeletal range of motion, normal reflexes, normal coordination, intact sensation, intact strength in the lower extremities, no hip tenderness, normal hip range of motion, normal pelvis stability, and normal musculoskeletal tenderness; her lack of compliance with her post-surgery care; her positive response to her left hip revision arthroscopy; and her normal gait during the period at issue are not consistent with greater or additional limitations.

Docket Item 5-1 at 407. Contrary to the ALJ's assertion, that evidence offers little to support the physical RFC determination. *See* Docket Item 5-1 at 408.[6]

For example, it is not clear how the ALJ was able to determine from that bare medical data that despite Keri's "multiple hip surgeries[,] . . . pain [and] . . . reduced range of motion in her hips, . . . limited coordination due to pain, . . . and diffuse weakness," Docket Item 5-1 at 408, she would be able to perform "sedentary work"

---

[6] Although the ALJ did not cite the record as part of his physical RFC explanation, *id.* at 407, he provided the same explanation with citations in discounting the opinions of the state agency consultants, *id.* at 408 (citing Docket Item 5 at 225-234, 286, 288, 310, 311, 312, 316, 346, 423, 470, 614, 625, 649-650, 657, 661-62, 664, 672-673, 679, 682, 686, 688, 770, 802, 807, 873, 875, 987, 1043, 1054, 1095, 1113; Docket Item 5-1 at 1, 73, 99, 310, 311, 420-466, 1082, 1085, 1092, 1098, 1102, 1108, 1135, 1143, 1156). But even giving the ALJ the benefit of those citations, the evidence still does not support the physical RFC. For example, the ALJ cited Keri's adult function report, where Keri reported that she was unable to walk, stand, or sit for more than thirty minutes. Docket Item 5 at 234. Likewise, in the cited hearing testimony, Keri testified that she could sit for only twenty minutes at a time. Docket Item 5-1 at 477. The ALJ also cited progress notes that document Keri's ongoing pain and tenderness in her hips, Docket Item 5 at 286, 288, 311, 316 625, 657, 664, 686, 875, 1043, 1113; Docket Item 5-1 at 73, 99, 310, as well as raw medical data regarding her condition, Docket Item 5 at 346, 423, 672-673, 679, 682, 688, 770, 807, 873, 987, 1054, 1095; Docket Item 5-1 at 1, 311, 1082, 1085, 1092, 1102, 1108, 1135, 1143. Although the ALJ is correct that there are several records indicating that Keri was observed to have normal gait and no musculoskeletal tenderness, Docket Item 5 at 470, 614, 650; Docket Item 5-1 at 1098, 1156, that says little about how long she can sit, stand, or walk. So the records cited by the ALJ do not support the physical RFC determination.

which "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day," *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir. 1996) (citing SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)).  Nor is it clear how the ALJ determined that Keri could occasionally climb ramps and stairs, balance, stoop, kneel, and crawl. Docket Item 5-1 at 404.  Indeed, other than reciting bare medical data, the ALJ provided no reason for his conclusion that Keri could perform those tasks occasionally—as opposed to always or seldom or frequently.  So the RFC must have been the product of the ALJ's lay judgment and therefore beyond his expertise.  *See e.g., Thomas v. Comm'r of Soc. Sec.,* 2019 WL 2295400, at *2 (W.D.N.Y. May 30, 2019) (remanding where "[a]ll of the records in the case consist of clinical notes that have no medical source statements and no other assessments of plaintiff's exertional and non-exertional abilities," yet "the Commissioner crafted a very specific RFC that included references to ladders, ropes, and scaffolds").

What is more, Keri testified that she could not sit for more than twenty minutes at a time, Docket Item 5-1 at 477, and the ALJ cited the hearing testimony as support for his determination, *id*. at 407-08.  But the ALJ never explained whether he discredited Keri's testimony—and, if so, why—nor did he explain how someone who has trouble sitting for more than twenty minutes at a time can do sedentary work which requires sitting six hours a day.  *Id.* at 405.  So the Court is left to guess at the rationale behind the RFC.

"Although the RFC determination is an issue reserved for the [C]ommissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Thomas,* 2019 WL 2295400, at *2 (quoting *House v. Astrue,* 2013 WL 422058, at *4

9

(N.D.N.Y. Feb. 1, 2013)).  Here, the physical RFC was based on nothing more than bare medical findings, and, even worse, the ALJ did not explain how those findings supported the RFC.  That alone requires remand.

Keri also argues that the ALJ's "mental portion of the RFC is similarly unsupported."  Docket Item 6-1 at 21.  For many of the same reasons stated above, this Court again agrees with her.

The ALJ provided the following explanation for Keri's mental RFC limitations:

> [C]onsidering [Keri's] mental status examinations showing fatigue, an anxious mood, a depressed mood, limited insight and judgment, rapid speech, agitated behavior, a blunt affect, low-average intelligence, an irritable mood, and tangential thought process; her subjective complaints; and her activities of daily living, the undersigned has limited [Keri] to the above mental limitations. However, [Keri's] normal mental status examinations showing pleasant and cooperative behavior, normal mood and affect, normal behavior, normal judgment, normal thought content, fair insight, good impulse control, intact memory, intact attention and concentration, normal cognition, and good eye contact; her conservative treatment during the period at issue; her lack of consistent compliance with her treatment; and her positive response to treatment when she was compliant are not consistent with greater or additional mental limitations.

Docket Item 5-1 at 408.

Similar to the ALJ's physical RFC determination, the ALJ never explained how this evidence supported his finding that Keri could "understand, remember, and carry out simple instructions[,] . . . work in a low stress job[,] . . . perform repetitive work, but not work requiring a specific production rate[,] . . . [or] have no more than occasional interaction with supervisors, coworkers, and the general public," Docket Item 5-1 at 404-405.  In formulating the RFC, the ALJ gave "little weight" to every medical opinion in the record.  *See* Docket Item 5-1 at 408-411.  But because the ALJ is not a medical

professional, disagreeing with physicians and psychologists and basing the RFC on raw medical data was beyond his expertise. *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) ("[T]he ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion . . . [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion or] testified before him.") (internal quotation marks and citations omitted). Therefore, and because the ALJ did not rely on any medical opinion to support his specific mental RFC findings, the mental RFC necessarily was a product of his own lay judgment.

An ALJ may not substitute his or her lay judgment for the opinions of medical professionals, and when there is no medical opinion to support a claimant's ability to perform a certain function, the ALJ cannot create an RFC from whole cloth. *See id.* Here, it is unclear how the ALJ fashioned the physical or mental RFC when he gave every medical opinion in the record "little" or "limited" weight," *see* Docket Item 5-1 at 408-411, and when he failed to explain how the raw medical data allowed him to reach the conclusions he did. Because the ALJ neither "tether[ed] his RFC to a medical opinion" nor offered good reason for not doing so, this Court cannot find that the RFC was supported by substantial evidence and remand is required. *See John G. v. Saul,* 2021 WL 118313, at *4 (W.D.N.Y. Jan. 13, 2021) (citing *Garcia Medina v. Comm'r of Soc. Sec.,* 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019)) ("The [RFC] here was not tethered to any particular medical opinion evidence. Indeed, the ALJ gave 'limited weight' to all three of the opinions she addressed. Because the ALJ here did not give controlling or substantial weight to any opinion that supported the RFC, it is unclear

precisely where the limitations set forth in the RFC came from and why they did not go further."); *Sherry v. Berryhill,* 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019); *Perkins,* 2018 WL 3372964, at *4.

### B. TREATING PHYSICIAN RULE

Keri also argues that the ALJ erred in weighing the opinion of Dr. Abraham, her treating physician. Docket Item 6-1 at 23. More specifically, she argues that the ALJ "failed to properly apply the treating physician rule and did not give good reasons to reject it." *Id.* This Court agrees.

For claims filed before March 27, 2017, such as Keri's, the ALJ must evaluate every medical opinion received when determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1527(c), and 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—those who have an "ongoing treating relationship" with the claimant—because those medical professionals are in the best position to provide a "detailed, longitudinal picture of [the claimant's] medical impairment[s]." 20 C.F.R §§ 404.1520(c)(2), and 416.927(c)(2); *see also Green-Younger v. Barnhart,* 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."). In fact, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by the medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008) (second brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2).

If an ALJ decides that a treating physician's opinion is not entitled to controlling weight, then he or she must explain why by "*explicitly* apply[ing] the factors listed in [sections 404.1527 and 416.927]; the failure to do so is procedural error." *Schillo v. Kijakazi,* 31 F.4th 64, 75 (2d Cir. 2022) (emphasis in original). Those factors, sometimes referred to as the "*Burgess* factors," include: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* (alterations and internal quotation marks omitted) (quoting *Estrella v. Berryhill,* 925 F.3d 90, 95-96 (2d Cir. 2019)); *see Burgess,* 537 F.3d at 129.

The ALJ gave each of Dr. Abraham's three opinions "little weight." Docket Item 5-1 at 410. The ALJ observed that Dr. Abraham "provided his March 2015 opinion on a check box/prompted form and did not provide objective findings, beyond [Keri's] mental health diagnosis and treatment, to support his opinion." *Id.* He noted that Dr. Abraham's "October 2015 opinion was provided as secondhand information from Andrew Irish, LMSW, with no supporting evidence." *Id.* With respect to both 2015 opinions, the ALJ noted that Dr. Abraham "only began seeing [Keri] on January 28, 2015"; therefore, the ALJ observed, Dr. Abraham had "only been treating [Keri] for about a month and a half" when he rendered his March 2015 opinion, "and had been treating [her] for a little more than eight months" when he rendered his opinion "in October 2015." *Id.* Finally, the ALJ found that Dr. Abraham's opinion "regarding [Keri's] ability to understand, remember, and carry out instructions and interact with others, is not consistent with the longitudinal record." *Id.*

13

Likewise, the ALJ assigned "little weight" to Dr. Abraham's April 2016 opinion, finding that the "opinion was provided on a prompted form and no objective evidence, beyond listing the medications [Keri] was taking, was provided to support [it]." *Id.* The ALJ also noted that "while the longitudinal record is consistent with a finding that [Keri] has mental limitations, it is not consistent with a finding that [she] is disabled." *Id.*

For several reasons, the ALJ erred. First, the ALJ's decision to discount Dr. Abraham's opinion simply because it was provided on a check-box form was error. *See Colgan v. Kijakazi,* 22 F. 4th 353, 361 (2d Cir. 2022) ("the evidentiary weight of a treating physician's medical opinion can [not] be discounted by an ALJ based on the naked fact that it was provided on a check-box form"). Moreover, and more important, while the ALJ discussed the first *Burgess* factor—the extent and timing of treatment—in assessing Dr. Abraham's opinions, he never addressed the fourth factor, whether the physician is a specialist. In fact, there is nothing in the ALJ's decision to suggest that he even considered Dr. Abraham's specialty as a psychiatrist, Docket Item 5-1 at 410, when addressing Dr. Abraham's opinion about Keri's mental functioning limitations. And given his specialization in psychiatry, Dr. Abraham was perhaps best qualified to opine about the nature and extent of any limitations resulting from Keri's mental impairments. Finally, the ALJ failed to explicitly consider "the amount of medical evidence *supporting* [Dr. Abraham's] opinion." *Burgess,* 537 F.3d at 117 (emphasis added).

Because the ALJ failed to "explicitly consider" the *Burgess* factors before assigning limited weight to the opinion of Keri's treating physician, the ALJ violated the treating-physician rule. Remand is required for that reason as well.

14

**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 12-1, is DENIED, and Keri's motion for judgment on the pleadings, Docket Item 6-1, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:  October 29, 2024
        Buffalo, New York

                                            *Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE